313-0021, people of the state of Illinois, a felling by Nora DeMichael v. Vance von Eubanks, a felling by Brian Kohut. Mr. Kohut, would you like to speak? May it please the Court. Good afternoon, Your Honors, Counsel. My name is Brian Kohut. I'm an assistant appellate defender with the Office of the State Appellate Defender. And I represent Mr. A. von Eubanks, the defendant in this criminal matter. Following the stipulated bench trial, Mr. Eubanks was found guilty of first-degree murder and sentenced to 50 years in prison. Before this Court and on appeal, Mr. Eubanks makes one argument, that his videotaped statement was inadmissible under Supreme Court Rule 402-F, which bars the admission of plea-related statements. Now the record shows that this was a plea-related statement. Mr. Eubanks was arrested in April of 2010. He denied any involvement in the offense. He sat in jail for over a year, made no admissions to anything. And lo and behold, in April of 2011, he makes a complete confession to the offense as charged. Twenty-two days after that, he pled guilty to the offense. Now any moment when his videotaped statement was made, he was with his attorney, two police detectives, and the assistant state's attorney who prosecuted the case sat outside the room texting questions to the detectives. At the end of that discussion, at the end of that statement, his defense attorney said, I want to go outside and make sure we're all good, which implies that he wanted to go out and talk to Ms. Kozlerich to make sure that a plea deal was in place. Subsequently, Mr. Eubanks withdrew his plea, and when he moved to withdraw his plea, he said that the plea was made for his continued cooperation in exchange for his testimony against his co-defendants. At that point in the record, he did not say that he made this statement in exchange for his plea of guilty. He said he pled guilty in exchange for his continued cooperation, which implies that he was cooperating before that. So it's made in exchange for his continued cooperation in his testimony against his co-defendants, as well as the 35-year deal. And then subsequently, when he withdrew his plea, he averred that he made this statement in exchange for the plea, that this statement was part of the plea. When he moved to suppress his statement, he again stated that this statement was part of the plea deal. The state never objected to any of these statements, and their argument essentially was that they could use his statement because it had upheld its end of that plea deal, implicitly acknowledging that this was a plea-related statement. Yes, sir? The plea negotiations, were they made before or after April 19th? April 19th, 2011? They would have been made before, during, and after that time. What date did they start? We don't know precisely from this record. How do we know any date before April 19th from this record, where there were plea negotiations? Is it just an assumption? I think it's readily apparent from this record, Your Honor, that there were some sort of negotiations going on before that, and included that videotaped statement. And then they occurred afterwards, until he actually pled guilty. So this statement was made as part of that negotiation process. The record does not specify when these negotiations started. Obviously, they stopped when he actually pled guilty. But it's clear that this statement was made as part of the negotiation process. And that's shown from defense counsel when he's in the room making the videotaped statement. He says at the very end, I want to go outside and make sure, you know, check with these guys to make sure we're okay. What that implies is that there is a deal in place. The only person outside is the assistant state's attorney that's prosecuting the case. It may imply that, but how do you mean that? And the state has suggested that, you know, furthermore, the stipulations in the stipulated bench file stated, point blank, that this statement was given as part of a proper agreement. So that statement in and of itself indicates that this was part of the plea negotiation process, Your Honors. Aren't you somewhat handicapped by the fact that trial counsel didn't raise this as a 402 issue? Somewhat, somewhat, yes. And that's why, Mr. Uday, so this is how counsel was ineffective. Clearly, the counsel's strategy was to bar the admission of this statement. What he should have done was raise 402. Is it possible that he couldn't argue that it was plea negotiated? Is it possible that he knew the negotiation didn't actually begin until after it was made? Of course, Your Honor, anything is possible. But I think this record shows that this was part of the negotiation process. This statement was given in exchange for what was part of his plea, his truthful statement, as well as his continued cooperation. And this is stated on the record within the motions to suppress and the motions to withdraw his guilty plea. He's stating flat out, I made this statement as part of the deal with the state. The state is not upholding the intent of the bargain. That was the nature of his argument before the court. And the state never, they never say, well, this wasn't part of the deal. They never say, if they would have said this statement was given freely and voluntarily, he just came up and gave this statement to get it off his chest, then this whole entire argument would have been shot to pieces. The state never makes that statement. Thereby, they're implicitly acknowledging that this statement was given as part of that plea deal. In order for it, I mean, I know they, the state made an argument that says, well, we will get rid of the firearm enhancement so that we can live up to our bargain. That would have required, at some point, the withdrawal of the guilty plea. I mean, they couldn't amend it. Could they amend the charge after the plea of guilty? They would have to do something here, Your Honor. The problem with this is the court allowed him to withdraw his guilty plea before he was sentenced, based on a sentencing problem, based on a void sentence. He said the sentence was void. The court allowed him to withdraw his plea based on this void sentence, but he hadn't been sentenced yet. So the state perhaps could have recharged him, and then he would have gone through the guilty plea process again. I don't know. That's not what occurs here. What happened here is that's not subject to this appeal here. I don't know. Can you give the reason to allow him to withdraw the guilty plea? Because it found that that firearm enhancement was not part of the plea, because it was void, essentially. That's the reason why the trial judge allowed him to withdraw that plea, because the firearm enhancement was contained in the factual basis, but the sentence was only 35 years. The agreed sentence was only 35 years. I'll have to look at the record again, but my impression was Judge Mearsman was just like, he didn't understand why the judge had to speak to withdraw the guilty plea. He thought it was a pretty good deal. It just kind of allowed him to do it. That's part of it as well. I think the basis was, and this comes out in subsequent proceedings, defense counsel says, you know, the reason why Judge Mearsman allowed this was because it was a void sentence. The state at that same proceeding, I think this was. But Judge Mearsman didn't say that. I don't think. I'll look at the record. I don't want to argue with you. Okay. Yeah, I mean, I think it's. I'll look at the record. I think the basis for Judge Mearsman's order allowing him to withdraw the guilty plea was this 25-year sentence. Otherwise, it's, you know, of course it's been in the court's discretion to withdraw a guilty plea, but just because the defendant wasn't happy, that's not a reason to allow him to withdraw a plea. And that's my interpretation of the record, that Judge Mearsman just kind of allowed him to do it without really a reason. But I'll look at the record. Okay. And as I stated, counsel should have raised this as a 402-F issue. Had he done so, there's a reasonable probability that the result of the proceeding would have been different. Mr. Eubanks never would have taken a stipulated bench trial if his statement would have been suppressed. I'm not sure that we can reach or decide the issue of whether counsel was ineffective because maybe there was a good reason counsel didn't make that. Well, the state does in its response, in its response brief, it asks this court to retain jurisdiction and remand for an evidentiary hearing to determine whether this was a plea-related statement. Mr. Eubanks has no objection to this court doing that, and he's fine with that because he's positive that what's going to happen on this evidentiary hearing is it's going to come out as a part of the deal. He has to raise it here on appeal. Now, the state argues that it should be raised in a post-conviction petition, but if he doesn't raise it now, comes up to post-conviction time, the judge is going to find out it's raised judicata, and that's the only way to say that counsel is ineffective in this. So it has to be raised here. I would agree that Judge Kerr didn't make any errors in this record. I mean, he wasn't even asked to consider the issue. And you have an appeal against his finding in the state's contractual argument. Not on the contractual argument. I don't agree that he did not make any errors, though. No, I think he should. Well, I think he should have acknowledged that the 402F applied. Somebody should have realized it. Counsel, his argument was it's not fair to allow defendants' plea-related statements to come in when the state cannot perform it, when the plea deal fell through. That's the 402F right there. It bars plea-related statements to encourage negotiated dispositions so that defendants aren't unfairly burdened with having their statements related to plea negotiations be admitted at trial. So he's making the same argument along the same lines as that rule. If there are no further arguments or questions, Your Honors, thank you. Has counsel purposely stated the state's position that you are in agreement it should be remanded? Well, the people argued that it would be more appropriately brought in a post-conviction petition because the record's insufficient. Alternatively, we argued that it could be remanded to determine whether it was plea-related. Your colleague, though, or opponent, however you wish to describe them, has indicated you agree it should go back. It's because if there's an agreement, maybe it should be reduced to writing and submitted as an agreed order. Questions on the back? Well, I think our primary argument was that it was more appropriately raised in a post-conviction petition, but our alternative argument was before saying on this record that, yes, this is plea-related, instead of relying on inferences that remand would be more appropriate, but primarily would have been the post-conviction argument. But another way to resolve this case, under the facts of this case, is to find that the admission of the statement was harmless error in any event. That would follow the procedural posture of TRAINA, which was cited in the People's Brief. In that case, it was a stipulated bench trial. And the court said maybe this confession was involuntary, maybe it wasn't. But under these facts, any error is harmless. They looked at the other evidence that was introduced at that stipulated bench trial. The people submit that an improperly admitted confession can be harmless. The sentence statement was no doubt a confession in this case. And Arizona v. Fulminante changed the landscape for a harmless error regarding confessions. That was a 1991 U.S. Supreme Court case. In that case, the defendant was in prison on suspicion of murdering his 11-year-old stepdaughter. He was beginning to get some rough treatment from the other inmates. And he befriended another inmate who was actually a paid informant for the FBI, masquerading as an organized crime figure. That organized crime figure person promised him protection if the defendant told him the truth, and the defendant then confessed to murdering his 11-year-old stepdaughter. The court found that that confession was coerced, but nonetheless found that even the improper admission of a coerced confession could be a harmless error. Then in Mitchell, the Illinois Supreme Court in 1992, held improperly admitted confessions were subject to the harmless error rule. And again, in- Is it true that these cases are all involuntary confession cases, and the issue here is the 402F statement? However, as discussed in Rice, Fulminante discussed how the error could be harmless because it was similar in degree and kind to the impact of other erroneously admitted constitutional violation errors, and specifically stated that the evidentiary impact was indistinguishable from the evidentiary impact of other constitutional violations. And here the evidentiary impact of admitting into evidence improperly a coerced confession is the same as the evidentiary impact of admitting a confession that would have been improper for the different 402 reasons. And if this court were not to find- The people who submit the evidence was harmless because the two witnesses would testify the defendant was the shooter, the defendant had had problems with one of the victims for leaving a gun in his brother's yard, that he knew through one of the co-defendants where the victim would be seated in the car. Only the back windows were shot out matching their statement as to had he been informed as to where the person he was to shoot was. Defendant had been driving a silver car that day. A silver car was observed creeping in the alley behind the area around the time of the offense. Also, defendant's cell phone had been left at the scene, and he immediately went to get a new cell phone with the same cell phone number right after the offense. Plus, the dark green Lincoln town car had been witnessed at the scene, and the two co-defendants were observed fleeing the area at a high rate of speed in the dark green Lincoln town car. So there's corroboration for the statement of the two witnesses about defendant being the shooter. If this court were to find there wasn't harmless error, the people would submit that on this record we just can't tell whether for sure whether it was plea-related or not, so it would be more appropriately brought in a post-conviction petition, but alternatively, if defendant didn't object to remaining for the definitive determination before finding that this definitively was, that that would be more appropriate. If there are no further questions, we would ask that the court affirm defendant's conviction and sentence. Any other questions? Again, Your Honors, Mr. Eubanks has no objection to a limited remand for evidentiary hearing to determine whether this statement was made as part of a plea negotiation process. As to the harmless error analysis that the state sets forth, it's the state's burden to show beyond a reasonable doubt that this error was harmless. Here, Mr. Eubanks entered a stipulated bench trial because the circuit court would not suppress this statement. Had the circuit court acted appropriately and suppressed the statement, then he never would have gone to a stipulated bench trial. He would have been able to consent to witnesses whose stipulated testimony was entered. Both witnesses were highly intoxicated at the time, and both had more accomplices whose testimony would have been called into question. He was unable to consult these witnesses. He was unable to go through a jury trial, or even a bench trial, by a prior fact. Essentially, this is a guilty plea. And he should have that opportunity to have a fair trial hearing. That's all he's really asking for. Okay, I'm trying to see this. Okay. An evidentiary hearing to determine whether this statement was made as part of a plea negotiation process. I think what counsel presented was that admitting this statement was unfair. It was sufficiently close to this court to find that this issue was not forfeited under Moore and Hyder, which are cited in Defendant's Open and Brief. In the alternative, if that issue was not sufficiently presented for the court to consider, then trial counsel should be found ineffective for failing to raise it. So it's within those two contexts that we have to determine if this court decides to remand it. That's why we have to determine whether it's a plea negotiation. If it was a plea-related statement, then this court has to deal with the ineffective assistance to counsel claim. The question of whether it's a plea-related statement provides the evidentiary basis for the framework to analyze this issue, Your Honor. What about the argument that this is more appropriately a PC matter, a post-conviction matter? I think that this record is sufficient to show that this statement was made as part of a plea deal. I think if you look in the entire context, he gets arrested. He doesn't make any admissions. He denies everything. He denies everything for a year. And then he comes around and makes a complete confession to everything. And during that confession, defense counsel is present, the state's attorney is present. Defense counsel says, okay, I'm going to go outside and talk and make sure we're good. You don't know whether they were ordering pizza or what? Well, I think the obvious inference is that this statement was part of the plea negotiation. I agree. And then 22 days later, he pleads guilty. When he moves to withdraw that plea, he said this statement was made as part of this negotiation. When he moved to suppress the statement, he said this statement was made as part of the plea negotiation. The state never contests these assertions. It's part of his affidavit. But your position is based just on these custodian inferences. There's nothing really attaching to something. It's custodian inferences about what these other words meant and good guesses and conjecture, right? I won't agree with that. But what I would agree, Your Honor, is at the time he pled guilty, there's no specific statement. This plea of guilty is made in exchange for his statement that he gave on April 19th and his testimony against his co-defendants and a 35-year sentence. I will agree to that statement. But I think that the record here is sufficient to demonstrate that he made this statement as part of the plea negotiation process. You've done a nice job here. I think the difficulty that I have with this record is your attorney court trial counsel sometimes didn't make great records for you to look at. And hence, your argument is incomplete. What I also don't want to happen, Your Honor, is for this to go into the post-conviction process and then the trial judge say, well, they argued this on appeal. Let's shoot it down. If this court finds that the record is insufficient at this point, then let this go to a post-conviction petition. Let this go to a post-conviction evidentiary hearing at the least. I just don't want it to go back to Rock Island and then just get shot down. And it drags my client's case out for a couple more years. And I understand that. But you've pinpointed an issue that has to meet. And that's why when you indicated there's some sort of an agreement that needs to be made, maybe that's the fastest way to get this addressed. Absolutely. But I don't hear Mr. Michael kind of committing to the agreement or remand. So if something changes, I'd recommend just let it go right away if you reach an agreement. It's in her response brief, Your Honor. She asked, this is better presented in a post-conviction process. Alternatively, this court could remand it for an evidentiary hearing. She proposed it. The state proposed it. And I accepted her proposal in the reply brief. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. And I think the next session will be issued to the hearing. Thank you. Thank you. Thank you. Thank you. All right. I'll stand to recess.